UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 3:24-CR-00151 |
| v. ) | JUDGE RICHARDSON |
| ) | |
| MATTHEW ISSAC KNOOT ) | |
| ) | |

**GOVERNMENT'S MOTION FOR A PRETRIAL CONFERENCE
PURSUANT TO THE CLASSIFIED INFORMATION PROCEDURES ACT, SUPPORTING
MEMORANDUM OF LAW, AND MOTION TO DESIGNATE A CLASSIFIED
INFORMATION SECURITY OFFICER**

The United States of America, by and through undersigned counsel, respectfully moves this Court for a pretrial conference pursuant to Section 2 of the Classified Information Procedures Act ("CIPA"), 18 U.S.C. App. III. In support of its motion, the government submits this memorandum of law to provide the Court with a detailed description of the procedures mandated by the CIPA for protecting classified information.

In addition, the government respectfully moves the Court for an Order designating a Classified Information Security Officer ("CISO") to assist the Court and Court personnel in the handling of any motions pursuant to CIPA and implementing any orders relating to the matter. The CISO will also assist in the processing of any necessary security clearances for the Court. A proposed order designating a CISO will be filed with this motion.

### I. CASE BACKGROUND

The indictment in this case charges the defendant MATTHEW ISAAC KNOOT with conspiracy to cause damage to protected computers, conspiracy to commit money laundering,

conspiracy to commit wire fraud, intentionally damaging protected computers, aggravated identity theft, and conspiracy to cause the unlawful employment of aliens. The charges relate to KNOOT's participation in a scheme from approximately July 2022 through August 2023 to obtain remote employment for one or more foreign information technology ("IT") workers with U.S. and U.K. companies by, among other means, using a stolen identity to deceive the employers into thinking they were hiring a U.S. citizen located in the United States.

The government respectfully requests that the Court convene a pretrial conference pursuant to Section 2 of CIPA to consider matters relating to the applicability of CIPA to discovery in this case. At the pretrial conference, the government will request a schedule for the filing of an *ex parte* motion, pursuant to Section 4 of CIPA, for *in camera* resolution concerning the specific classified information at issue. The government does not anticipate providing classified information to the defense in this case, nor does the government anticipate using classified information affirmatively at trial. The government does not ask the Court to set a pretrial conference at this time, as any meaningful discussion CIPA may still be premature. Moreover, the government may be able to resolve certain issues in advance, allowing the Court to hold CIPA Sections 2 and 4 hearings in quick succession. Nonetheless, the government is filing this motion now so that its formal request is in place, and to provide the Court and the defendant with initial guidance on CIPA procedures.

## II. OVERVIEW OF THE CLASSIFIED INFORMATION PROCEDURES ACT

CIPA was enacted in 1980 to enable courts to evaluate potential classified information issues in criminal cases before jeopardy attaches. CIPA itself does not change the government's discovery obligations, and it does not alter the rules of evidence. Instead, CIPA mandates procedures at the pretrial, trial, and appellate stages of a criminal case that enable courts to protect a defendant's right

to due process, including the right to a fair trial, and to protect the government's interest in classified information, sources, and methods. *See United States v. Amawi*, 695 F.3d 457, 468 (6th Cir. 2012) (CIPA "provides a set of procedures for federal courts to follow when the government seeks to protect classified information from disclosure."); *United States v. Pringle*, 751 F.2d 419, 427 (1st Cir. 1984) (CIPA "enable[s] the government to ascertain prior to trial the classified information which the defendant possesses so that it can evaluate the effect of its disclosure on national security"); *United States v. Sterling*, 724 F.3d 482, 515 (4th Cir. 2013) (CIPA "was designed to balance the defendant's interest in a fair trial and the government's interest in protecting national security information"); *United States v. Rezaq*, 134 F.3d 1121, 1142 (D.C. Cir. 1998) (discussing balance between national security and due process rights of the defendant); *see also United States v. Dumeisi*, 424 F.3d 566, 578 (7th Cir. 2005) (CIPA's fundamental purpose is to "protect and restrict the discovery of classified information in a way that does not impair the defendant's right to a fair trial") (internal quotation marks and citation omitted) and *United States v. Sarkissian*, 841 F.2d 959, 965 (9th Cir. 1988) ("CIPA creates a pretrial procedure for ruling upon the admissibility of classified information.").

The Supreme Court has acknowledged the importance of protecting the nation's secrets from disclosure, noting that "[t]he Government has a compelling interest in protecting both the secrecy of information important to our national security and the appearance of confidentiality so essential to the effective operation of our foreign intelligence service." *CIA v. Sims*, 471 U.S. 159, 175 (1985) (internal quotes and citation omitted). Accordingly, federal courts have long recognized that "[i]t is not in the national interest for revelation of either the existence or the product of [foreign intelligence operations and information] to extend beyond the narrowest limits compatible with the assurance that no injustice is done to the criminal defendant . . . ." *United States v. Lemonakis*, 485

3

F.2d 941, 963 (D.C. Cir. 1973).

CIPA sets forth procedures by which federal courts rule on pretrial matters concerning the discovery, admissibility, and use of classified information in criminal cases. *United States v. Baptista-Rodriguez*, 17 F.3d 1354, 1363 (11th Cir. 1994). The fundamental purpose of CIPA is to "harmonize a defendant's right to obtain and present exculpatory material [at] trial and the government's right to protect classified material in the national interest." *United States v. Pappas*, 94 F.3d 795, 799 (2d Cir. 1996) (internal quotes and citation omitted). It "evidence[s] Congress's intent to protect classified information from unnecessary disclosure at any stage of a criminal trial." *United States v. Apperson*, 441 F.3d 1162, 1192 n.8 (10th Cir. 2006) (internal quotes and citation omitted).

### III. OVERVIEW OF KEY SECTIONS OF CIPA

#### A. Section 1: Definitions

Section 1 of CIPA defines "classified information" as "any information or material that has been determined by the United States government pursuant to an Executive order, statute, or regulation, to require protection against unauthorized disclosure for reasons of national security." 18 U.S.C. App. III § 1. In turn, "national security" is defined as "the national defense and foreign relations of the United States." *Id*.

#### B. Section 2: Pretrial Conference

Section 2 of CIPA—the section the government is invoking in this motion—provides that "[a]t any time after the filing of the indictment or information, any party may move for a pretrial conference to consider matters relating to classified information that may arise in connection with the prosecution." 18 U.S.C. App. III § 2. CIPA contemplates that such conferences might address

4

defense requests related to discovery, disclosure, or use of classified information. Here, however, the government seeks merely to protect classified information from unwarranted discovery, rather than to use it affirmatively, and such conferences serve to advise a court of forthcoming, *ex parte* motion practice in a manner that promotes a fair and expeditious trial.

No substantive issues concerning the use of classified information are to be decided in a Section 2 pretrial conference. *See* S. Rep. No 96-823, at 5-6 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4294, 4298-99. Moreover, to foster open discussions at the pretrial conference, Section 2 provides that no admission made by the defendant or his or her attorney at the pretrial conference may be used against the defendant unless the admission is in writing and signed by both the defendant and his or her attorney. *See* 18 U.S.C. App. III § 2.

C.     **Section 3:  Protection Against Disclosure**

Section 3 of CIPA requires the Court, upon the request of the United States, to issue an order "to protect against the disclosure of any classified information disclosed by the United States to any defendant in any criminal case. . . ." 18 U.S.C. App. III § 3. In addition to prohibiting such disclosure, protective orders issued under CIPA generally set forth rules for all parties governing the use and storage of classified information, which is facilitated by the CISO.

Section 3 was also intended to codify federal courts' well-established practice to issue protective orders based on courts' inherent authorities, as well as to supplement federal courts' authority under Rule 16(d)(1) to issue protective orders in connection with the discovery process. In contrast to the discretionary authority in Rule 16(d)(1), Section 3 of CIPA provides that, when classified information is involved, protective orders shall be issued whenever the government discloses classified information to a defendant in connection with a prosecution. *See* H.R. Rep. No.

5

96-831, part 1, at 26 (1980). However, as noted above, the government does not at this time anticipate that any classified information will need to be provided to the defense, nor used at trial, and, therefore, does not anticipate moving for a protective order pursuant to Section 3 of CIPA.

### D. Section 4: Discovery of Classified Information by Defendants

Section 4 of CIPA provides a procedural mechanism to protect classified information, sources, and methods, while simultaneously ensuring that the government is able to satisfy its discovery obligations. CIPA does not create any new right of discovery or expand the rules governing the admissibility of evidence. *Dumeisi*, 424 F.3d at 578 ("CIPA does not create any discovery rights for the defendant."); *United States v. Johnson*, 139 F.3d 1359, 1365 (11th Cir. 1998) ("CIPA has no substantive impact on the admissibility or relevance of probative evidence."); *United States v. Smith*, 780 F.2d 1102, 1106 (4th Cir. 1985) ("The legislative history is clear that Congress did not intend to alter the existing law governing the admissibility of evidence.").[1] Rather, CIPA applies preexisting general discovery law in criminal cases to classified information and restricts discovery of such information to protect the government's national security interests. *United States v. Klimavicius-Viloria*, 144 F.3d 1249, 1261 (9th Cir. 1998); *Baptista-Rodriguez*, 17 F.3d at 1363-64; *United States v. Yunis*, 867 F.2d 617, 621.

CIPA thus does not, and was not intended to, "expand the traditional rules of discovery under which the government is not required to provide criminal defendants with information that is neither

---

[1] *Smith* adopted the "relevant and helpful" standard discussed herein in the context of CIPA Section 6 determinations regarding the use, relevance, and admissibility of classified information. Other courts, including the Sixth Circuit, have since applied a similar standard to discovery of classified information under CIPA Section 4. *See, e.g.*, *United States v. Hanna*, 661 F.3d 271, 295 (6th Cir. 2011); *United States v. Yunis*, 867 F.2d 617, 623-25 (D.C. Cir. 1989); *United States v. Drake*, 2011 WL 2175007, at *6 (D. Md. 2011) (unreported case).

6

exculpatory nor, in some way, helpful to the defense." *United States v. Varca*, 896 F.2d 900, 905 (5th Cir. 1990); *see United States v. McVeigh*, 923 F. Supp. 1310, 1314 (D. Colo. 1996) ("CIPA does not enlarge the scope of discovery or of *Brady*"); *see also United States v. Abu Ali*, 528 F.3d 210, 247 (4th Cir. 2008). Nor does CIPA provide that the admissibility of classified information be governed by anything other than the "well-established standards set forth in the Federal Rules of Evidence." *Baptista-Rodriguez*, 17 F.3d at 1364 (citations omitted).

Accordingly, pursuant to Section 4, district courts have the opportunity to assess whether, and to what extent, specified items of classified information should be disclosed. Specifically, Section 4 provides that "[t]he court, upon a sufficient showing, may authorize the United States to delete specified items of classified information from documents to be made available to the defendant through discovery under the Federal Rules of Criminal Procedure, to substitute a summary of the information for such classified documents, or to substitute a statement admitting the relevant facts that classified information would tend to prove." 18 U.S.C. App. III, § 4; *see also, United States v. Sedaghaty*, 728 F.3d 885, 904 (9th Cir. 2013); *Rezaq*, 134 F. 3d at 1142.

Similarly, the Federal Rules of Criminal Procedure provide that "[u]pon a sufficient showing," a district court: "may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Fed. R. Crim. P. 16(d)(1). The legislative history of CIPA makes it clear that Section 4 was intended to clarify the district court's power under Rule 16(d)(1) to deny or restrict discovery in order to protect national security. S. Rep. No. 96-823 at 6, 1980 U.S.C.C.A.N. at 4299-4300; *see also United States v. Pringle,* 751 F.2d 419, 427 (1st Cir. 1984). Section 4 of CIPA, like Rule 16(d) of the Federal Rules of Criminal Procedure, provides that the United States may file its Section 4 motion in the "form of a written statement to be inspected by the court alone." 18 U.S.C. App. III § 4 ("The court may permit the United States to make a request for such authorization ["to

7

delete specified items of classified information"] in the form of a written statement to be inspected by the court alone."); Fed R. Crim. P. 16(d)(1) (the government may move for a protective order "*ex parte*").

A district court when considering a Section 4 motion "must first determine whether, pursuant to the Federal Rules of Criminal Procedure, statute, or the common law, the information at issue is discoverable at all." *Sedaghaty*, 728 F.3d at 904 (citing *United States v. Rewald*, 889 F.2d 836, 847-48 (9th Cir. 1989)). If the material is deemed discoverable, the Court next determines whether the government has made a claim of privilege over the classified information. *See United States v. Klimavicius-Viloria*, 144 F.3d 1249, 1261 (9th Cir. 1998) (citations omitted). If the court concludes the material is discoverable and the privilege applies, "then the court must determine whether the evidence is 'relevant and helpful to the defense of an accused.'" *Sedaghaty*, 728 F.3d at 904 (citing *Roviaro v. United States*, 353 U.S. 53, 60-61 (1957)). *See also United States v. Hanna*, 661 F.3d 271, 295 (6th Cir. 2011) ("a district court withholding evidence under CIPA must first determine whether the material in dispute is discoverable, then whether the material is privileged, but then determine if the information is "at least 'helpful to the defense.'"); *United States v. Gurolla*, 333 F.3d 944, 951 (9th Cir. 2003)); *United States v. Yunis*, 867 F.2d 617, 623-25 (D.C. Cir. 1989).

Thus, if the district court determines that the classified information is not "relevant to the determination of the guilt or innocence of the defendant[]," or "helpful to the defense," or "essential to a fair determination of the cause," it is within the Court's authority to withhold disclosure of the information. *Smith*, 780 F.2d at 1110 (quoting with approval *Pringle*, 751 F.2d at 428, and holding that defendant's right to discovery must be balanced against public interest in nondisclosure); *see also Yunis*, 867 F.2d at 623 ("a defendant seeking classified information . . . is entitled only to information that is at least 'helpful to the defense of [the] accused.'" (quoting *Roviaro*, 353 U.S. at 60-61) and

*Hanna*, 661 F.3d at 295 ("a district court withholding evidence under CIPA must . . . determine if the information is 'at least 'helpful to the defense.'") (internal quotations omitted) (quoting *Yunis*, 867 F.2d at 623). CIPA's legislative history also makes clear that the Court may take national security interests into account in determining whether to permit discovery to be denied, restricted or deferred. *See* S. Rep. No. 96-823, at 6, *reprinted in* 1980 U.S.C.C.A.N. 4294, 4299-4300 (1980) (citing "the protection of information vital to the national security" as one consideration justifying limitations on discovery).

The Sixth Circuit has consistently upheld the government's authority to file Section 4 CIPA pleadings *in camera* and *ex parte*. In *Hanna*, the Sixth Circuit held CIPA "'permits the government to have the trial court examine classified information *in camera* and *ex parte* and determine whether it is necessary for the defense.'" 661 F.3d at 295 (6th Cir. 2011) (quoting *United States v. Smith*, 899 F.2d 564, 565 n. 1 (6th Cir.1990); *see also Amawi*, 695 F.3d at 472 ("[E]very court that has considered this issue has held that CIPA permits *ex parte* hearings.") (quoting *Kimavicius-Viloria*, 144 F.3d at 1261 ("[i]n a case involving classified documents, . . . *ex parte, in camera* hearings in which government counsel participates to the exclusion of defense counsel are part of the process that the district court may use in order to decide the relevancy of the information")).

Even if defense counsel holds appropriate security clearances, it "does not mean that [they are] entitled to access the government's classified filings." *Sedaghaty*, 728 F.3d at 909. Likewise, while the defendant may be entitled to notice when the government initiates CIPA proceedings under Section 4 or 6, there is "no due process right to receive a description of materials in the government's possession that are not discoverable." *Id.* (citing *United States v. Mejia*, 448 F.3d 436, 458 (D.C. Cir. 2006) (noting that in the CIPA context, as in other discovery in criminal cases, the defendant is "not entitled to access any of the evidence reviewed by the court . . . to assist in his argument that it should

be disclosed")). Defendant, however, may be permitted to file his own *ex parte* submission outlining his or her theory of the defense to aid the court in the review of any classified materials. *See Sedaghaty*, 728 F.3d at 906 n. 10.

E. **Sections 5 and 6: Notice of Defendant's Intent to Disclose and Pretrial Evidentiary Rulings**

The government does not anticipate CIPA proceedings beyond Section 4. For the Court's awareness, however, there are three critical pretrial steps in the handling of classified information under CIPA after such information has been provided to the defendant through discovery. First, Section 5 requires that the defendant specify the classified information he or she reasonably expects to disclose at trial. Second, the court, upon motion of the government, shall hold a hearing to determine the use, relevance, and admissibility of evidence that either party seeks to introduce. 18 U.S.C. App. III § 6(a). Third, following the Section 6(a) hearing and formal findings of admissibility by the court, the government may move to substitute an admission of relevant facts or summaries for the classified information the court rules to be admissible. 18 U.S.C. App. III § 6(c). *See, e.g., Baptista-Rodriguez*, 17 F.3d at 1363; *United States v. Collins*, 720 F.2d 1195, 1197-99 (11th Cir. 1983).[2]

F. **Section 7: Interlocutory Appeal**

Section 7 permits the government to take an expedited interlocutory appeal to the appellate court if the district court: (i) authorizes the disclosure of classified information; (ii) imposes sanctions for nondisclosure of classified information; or (iii) refuses to issue a protective order sought by the

---

[2] Because the government does not anticipate the need for proceedings pursuant to Sections 5 or 6, the processes those sections require are not described in detail herein. Upon the Court's request, the government can provide a more detailed briefing regarding Sections 5 and 6.

government to prevent the disclosure of classified information. *See* 18 U.S.C. App. III § 7(a). If an appeal is taken, trial shall not commence, or must be adjourned if already commenced, until the appeal is resolved. 18 U.S.C. App. III § 7(b). Such an appeal and decision does not affect the defendant's right to lodge a subsequent appeal of an adverse ruling by the trial court upon conviction. *Id.*

### G. Section 8: Introduction of Classified Information at Pretrial Proceedings or Trial

Section 8 prescribes additional protections and procedures governing the introduction of classified information into evidence. Section 8(a) provides that classified documents may be admitted into evidence without changing their classification status. To prevent "unnecessary disclosure" of classified information, Section 8(b) permits the court to order admission into evidence of only a part of a writing, recording, or photograph, or the entirety of said items with all or part of the classified information contained therein excised, unless fairness requires that the entirety of the relevant item be considered. Section 8(c) provides a procedure to address issues presented by any question or line of inquiry that would require a witness to disclose classified information not previously deemed admissible. If the government poses an objection to the examination, the court "shall take such suitable action to determine whether the response is admissible as will safeguard against the compromise of any classified information," to include requiring a proffer from the government of the anticipated response and a proffer from the defendant of the information sought to be elicited. 18 U.S.C. App. III § 8(c).

### H. Section 9: Security Procedures

Section 9 of CIPA requires the Chief Justice of the United States, in consultation with the Attorney General, the Director of National Intelligence, and the Secretary of Defense, to prescribe rules establishing procedures to protect against unauthorized disclosure of any classified information

11

in the custody of United States courts. 18 U.S.C. App. III § 9(a). These rules, known as the Revised Security Procedures, were established under Pub. L. 96-456, 94 Stat. 2025, by the Chief Justice of the United States and promulgated pursuant to Section 9 of CIPA. The Revised Security Procedures provide, among other things, that if a criminal proceeding is expected to involve classified information, the court "*will* designate" a CISO. Revised Security Procedures § 2 (emphasis added).

## IV.  REQUEST TO DESIGNATE CISO

In anticipation of classified information issues that may arise in this case, the government requests that the Court designate a CISO pursuant to Section 2 of the Revised Security Procedures. That section provides that:

> In any proceeding in a criminal case or appeal therefrom in which classified information is within, or is reasonably expected to be within, the custody of the court, the court will designate a "classified information security officer." The Attorney General or the Department of Justice Security Officer will recommend to the court a person qualified to serve as a classified information security officer. This individual will be selected from the Litigation Security Group, Security and Emergency Planning Staff, Department of Justice, to be detailed to the court to serve in a neutral capacity.

Revised Security Procedures established under Pub. L. 95-456, 94 Stat. 2025 § 2. CISOs designated pursuant to this process are responsible for the security of all classified information in the Court's custody and assist the Court with appropriate security clearances for Court staff, as well as the handling and storage of any classified materials including any pleadings or other filings related to CIPA proceedings. Importantly, the defendant plays no role in the designation of a CISO. As long as the Court is satisfied that the government's request to appoint a CISO comports with the Revised Security Procedures, it shall designate a CISO to assist with the handling of classified information pursuant to Section 2 of the Revised Security Procedures.

The government requests that the Court designate William S. Noble as the CISO to perform

12

the duties and responsibilities prescribed for CISOs in the Security Procedures for this case. Mr. Noble is an employee of the Litigation Security Group of the U.S. Department of Justice. The government further requests that the Court designate the following persons as Alternate CISOs, to serve in the event Mr. Noble is unavailable: Jennifer H. Campbell, Daniel O. Hartenstine, Aleksandr Kurtov, Daniella M. Medel, Matthew W. Mullery, Harry J. Rucker, and Winfield S. "Scooter" Slade. Each of these alternate CISOs are also from the Litigation Security Group of the Department of Justice and hold appropriate security clearances.

V.     **CONCLUSION**

The United States respectfully moves for a pretrial conference, to be held at a later date, pursuant to Section 2 of CIPA to establish a motion schedule relating to any classified information. Specifically, at the pretrial conference, the government will request a schedule for the filing of an *ex parte* motion, pursuant to Section 4 of CIPA, for *in camera* resolution concerning classified information. Further, the government respectfully requests that the Court designate a CISO and alternate CISOs.

                                         Respectfully submitted,

                                         HENRY C. LEVENTIS
                                         UNITED STATES ATTORNEY

Date: November 25, 2024          By: */s/ Joshua Kurtzman*
                                         JOSHUA KURTZMAN
                                         Assistant United States Attorneys
                                         Middle District of Tennessee

                                         GREGORY JON NICOSIA, JR.
                                         Trial Attorney
                                         National Security Division
                                         United States Department of Justice

## CERTIFICATE OF SERVICE

      I hereby certify that the above document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Date: November 25, 2024            */s/ Joshua Kurtzman*
                                                            JOSHUA KURTZMAN
                                                            Assistant United States Attorneys
                                                            Middle District of Tennessee